IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| MELVIN A. ST. AMANT and | § | **PLAINTIFFS** |
| CHESTER B. HAMMOND | § | |
| | § | |
| v. | § | CIVIL NO.: 1:14cv174-HSO-RHW |
| | § | |
| KNIGHTS' MARINE AND | § | **DEFENDANTS** |
| INDUSTRIAL SERVICES, INC., | § | |
| DAVID KNIGHT, and BRIAN | § | |
| KNIGHT | § | |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' [20] MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, DENYING PLAINTIFFS' [42] REQUEST FOR ORAL ARGUMENT, DENYING PLAINTIFFS' [29] MOTION TO STRIKE OFFERS OF JUDGMENT AND MOTION TO DISMISS, AND DENYING AS MOOT DEFENDANTS' [14] RULE 12(B)(6) MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF AND PREJUDGMENT INTEREST, PLAINTIFFS' [22] MOTION FOR CONDITIONAL CERTIFICATION, PLAINTIFFS' [58] MOTION TO ALLOW EQUITABLE TOLLING, DEFENDANTS' [36] MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT, DEFENDANTS' [48] MOTION TO DISMISS OPT-IN PLAINTIFF'S CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION, AND DEFENDANTS' [76] MOTION FOR LEAVE TO FILE SUPPLEMENTAL MEMORANDUM**

BEFORE THE COURT are the (1) [14] Rule 12(b)(6) Motion to Dismiss

Plaintiffs' Claims for Injunctive Relief and Prejudgment Interest filed by

Defendants Knights Marine and Industrial Services, Inc., David Knight, and Brian

Knight; (2) Defendants' [20] Motion to Dismiss for Lack of Subject Matter

Jurisdiction; (3) [29] Motion to Strike Offers of Judgment and Motion to Dismiss

filed by Plaintiffs Melvin A. St. Amant and Chester B. Hammond; (4) Plaintiffs' [22]

Motion for Conditional Certification; (5) Defendants' [36] Motion to Dismiss

Plaintiffs' Amended Complaint; (6) Plaintiffs' [42] Request for Oral Argument; (7) Defendants' [48] Motion to Dismiss Opt-in Plaintiff's Claims for Lack of Subject Matter Jurisdiction; (8) Plaintiffs' [58] Motion to Allow Equitable Tolling; and (9) Defendants' [76] Motion for Leave to File Supplemental Memorandum. With the exception of Defendants' [76] Motion for Leave to File Supplemental Memorandum, these Motions are fully briefed and ripe for decision.

Having considered the parties' submissions, the record, and relevant legal authorities, the Court finds that Plaintiffs' [42] Request for Oral Argument and [29] Motion to Strike Offers of Judgment and Motion to Dismiss should be denied, and Defendants' [20] Motion to Dismiss for Lack of Subject Matter Jurisdiction should be granted. Defendants' [14] Rule 12(b)(6) Motion to Dismiss Plaintiffs' Claims for Injunctive Relief and Prejudgment Interest, Plaintiffs' [22] Motion for Conditional Certification, Plaintiffs' [58] Motion to Allow Equitable Tolling, Defendants' [36] Motion to Dismiss Plaintiffs' Amended Complaint, Defendants' [48] Motion to Dismiss Opt-in Plaintiff's Claims for Lack of Subject Matter Jurisdiction, and Defendants' [76] Motion for Leave to File Supplemental Memorandum are therefore moot, and this case should be dismissed.

## I. BACKGROUND

Plaintiffs Melvin A. St. Amant ("St. Amant") and Chester B. Hammond ("Hammond") (collectively, "Plaintiffs") filed a [1] Collective Action Complaint on April 21, 2014, advancing a single claim for violation of the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 ("FLSA"). St. Amant was

employed by Defendant Knights' Marine and Industrial Services, Inc. ("KMIS"),[1] as

a structural welder from May 2013 through February 2014.  Collective Action

Compl. 4 [1].  Plaintiffs allege that Defendants advertised St. Amant's position as

paying $22.00 per hour, but his weekly wage was divided into two pay checks, one

of which was for $11.00 per hour of regular or "straight" time, which was increased

to $16.50 per hour for overtime hours worked, while the other check was based on

an $11.00 hourly per diem for each hour St. Amant worked, whether regular or

overtime.  *Id.*

Plaintiffs assert that Hammond was employed as a structural welder for

KMIS "off and on for the last five years until . . . November 2013."  Hammond's

position was advertised as paying $22.00 per hour, but his hourly wage was split

into two pay checks in an identical fashion to St. Amant's hourly wage, although

Hammond later received a $1.00 increase in pay during his employment.  *Id.* at 4-5.

Plaintiffs

> bring this lawsuit . . . as a collective action on behalf of the following class
> of potential opt-in litigants: all individuals employed within the last three
> years by Defendants, who were paid a regular hourly rate and regular
> hourly per diem without receiving overtime compensation at one-and-
> [one]-half times their regular rate for hours worked in excess of forty
> during a single workweek, including but not limited to, structural
> welders, pipe welders, pipefitters, shipfitters, electricians, outside
> machinists, etc.  Plaintiffs aver that such individuals are "similarly-
> situated" for the purposes of this FLSA collective action because said
> individuals were and are subject to a common policy, plan, and design
> that stretches across Defendants' operations, departments, and locations.

---

[1] According to Plaintiffs, Defendant Brian K. Knight is President and Secretary of KMIS, and
Defendant David E. Knight is Vice-President and Treasurer of KMIS.  Collective Action Compl. 3 [1].

*Id.* at 3-4. Plaintiffs maintain that they are representative of all Unnamed Plaintiffs because the Unnamed Plaintiffs "have the same or closely similar job duties as" Plaintiffs and were paid by KMIS in the same manner. *Id.* at 5.

On September 17, 2014, Defendants served St. Amant and Hammond via certified mail with separate Offers of Judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure. Mem. in Supp. of Mot. to Dismiss 3 [21]. In their Offer of Judgment to St. Amant, Defendants offered to allow entry of judgment against them in the total amount of $1,436.50, based on a calculation of $717.75 in overtime premium pay owing to St. Amant, plus liquidated damages in the amount of $717.75, plus $1.00. Offer of Judgment to St. Amant [21-1, 3-4 of 11]. Defendants offered to "pay to [St. Amant] all costs and reasonable attorney's fees pursuant to the [FLSA], as determined by the Court." *Id.* Defendants' Offer of Judgment to Hammond offered to allow entry of judgment in Hammond's favor and against Defendants in the amount of $3,224.50, consisting of $1,611.75 in unpaid overtime compensation, an additional $1,611.75 in liquidated damages, plus $1.00. Offer of Judgment to Hammond [21-2, 4-5 of 14]. Defendants also offered to "pay to [Hammond] all costs and reasonable attorney's fees pursuant to the [FLSA], as determined by the Court." *Id.*

By October 3, 2014, Plaintiffs had not accepted the Offers of Judgment and Defendants filed a [20] Motion to Dismiss on grounds of lack of subject matter jurisdiction, attaching the Offers and Plaintiffs' payroll records in support. Mem. in Supp. of Mot. to Dismiss 3-5 [21]. Defendants contend both Offers comprised the

4

maximum amount of damages available to each Plaintiff under the FLSA, and point out that Plaintiffs did not accept the Offers before they expired. *Id.* According to Defendants, Plaintiffs' failure to accept the Offers renders Plaintiffs' claims moot, depriving the Court of subject matter jurisdiction over Plaintiffs' claims. *Id.* at 4-8. Plaintiffs respond that Defendants' Motion [20] should be denied because Defendants revoked the Offers of Judgment by filing the [20] Motion to Dismiss before the deadline for responding to the Offers had expired. Mem. in Opp'n to Mot. to Dismiss 5-6 [31]. Plaintiffs also posit that the Offers could not have rendered their claims moot because the Offers were based on incorrect calculations and failed to fully satisfy Plaintiffs' claims. *Id.* at 8-11. Plaintiffs further contend that the Offers were made without sufficient time to develop facts related to payments made to Plaintiffs or to seek certification of a collective action. *Id.* at 15-16.

After Defendants filed their [20] Motion seeking dismissal on grounds of mootness, Plaintiffs filed a [26] First Amended Collective Action Complaint ("Amended Complaint") on October 8, 2014, adding claims against Defendants for fraudulent misrepresentation and negligent misrepresentation, which Plaintiffs say make clear the presence of a justiciable controversy and preclude dismissal on grounds of mootness. Mem. in Opp'n to Mot. to Dismiss 17-18 [31]. Also on October 8, 2014, Plaintiffs filed their [22] Motion for Conditional Certification, which they argue should relate back to the date that the original Complaint was filed and also precludes any finding of mootness. *Id.* at 15-16. Plaintiffs next filed a [29] Motion to Strike Defendants' Offers of Judgment and Motion to Dismiss on October 16,

2014. In addition, on November 11, 2014, Opt-in Plaintiff Ernest Harris ("Harris") filed a Notice of Filing Consent to Joinder [45], attempting to join as a plaintiff in this case.

## II. DISCUSSION

A.    Plaintiffs' [42] Request for Oral Argument

"Because the [20] Motion to Dismiss and [29] Motion to Strike are related and so intertwined as to require analysis of both together, . . . Plaintiffs respectfully request [o]ral [a]rgument on both motions." Request for Oral Argument 2 [42]. District courts have discretion to grant or deny written requests for oral argument related to motions under review. L. U. Civ. R. 7(b)(6)(A). To the extent that Plaintiffs seek leave to present oral argument related to their [29] Motion to Strike, the Court, in its discretion, does not find that oral argument is necessary or would be helpful in resolving the [29] Motion, and Plaintiffs' [42] Request for Oral Argument related to the [29] Motion will be denied. With respect to Defendants' [20] Motion to Dismiss for Lack of Subject Matter Jurisdiction, the record sufficiently sets forth the parties' positions such that oral argument would not meaningfully assist the Court in resolving that [20] Motion, and for this reason the Court will deny Plaintiffs' [42] Request for Oral Argument as it relates to the [20] Motion to Dismiss.

B.    Plaintiffs' [29] Motion to Strike Offers of Judgment and Motion to Dismiss

Plaintiffs assert that the Offers of Judgment were revoked when Defendants filed their [20] Motion to Dismiss, before the Offers expired. Mem. in Supp. of Mot.

6

to Strike 9-10 [30]. Plaintiffs further contend that the [20] Motion to Dismiss should be struck because Plaintiffs subsequently filed a [22] Motion for Conditional Certification which relates back to the date of their original April 21, 2014, [1] Collective Action Complaint, thus preventing a finding of mootness. *Id.* at 10-11.

As a threshold matter, the Court agrees that the Offers of Judgment had not expired at the time Defendants filed their [20] Motion to Dismiss on October 3, 2014. An offeree who has received an offer of judgment made pursuant to Rule 68 must accept that offer, if at all, within fourteen (14) days of being served with the offer. Fed. R. Civ. P. 68. However, "[w]hen a party may or must act within a specified time after service and service is made [by mail] under Rule 5(b)(2)(C), . . . 3 days are added after the period would otherwise expire . . . ." Fed. R. Civ. P. 6(d). "Rule 6(d)'s definition of 'service' is limited to those papers described in Rule 5(a)(1), which provides: . . . [u]nless these rules provide otherwise, each of the following papers must be served on every party: . . . a written . . . offer of judgment . . . ." *Palmyra Park Hosp., Inc. v. Phoebe Putney Mem'l Hosp., Inc.*, 688 F. Supp. 2d 1356, 1359 (M.D. Ga. 2010) (quoting Fed. R. Civ. P. 5(a)(1)).

Applying Rules 5(b)(2)(C) and 6(d) here, Defendants served Plaintiffs with the Offers of Judgment via certified mail on September 17, 2014. Plaintiffs had seventeen days, or until Monday, October 6, 2014, to accept those Offers. *See Green v. Monarch Recovery Mgmt., Inc.*, No. 1:13-cv-00418-SEB, 2013 WL 5203809, at *1 (S.D. Ind. Sept. 16, 2013) ("Pursuant to [Rule] 68, the Offer of Judgment is now

7

considered withdrawn because Plaintiff did not accept the offer within seventeen days (fourteen days per Rule 68, plus three days pursuant to Rule 6(d)) . . . .").

Plaintiffs argue that Defendants effectively revoked the Offers of Judgment by filing their [20] Motion to Dismiss on October 3, 2014, prior to the Offers expiring, but do not cite any legal authority in support of this theory. Mem. in Supp. of Mot. to Strike 10-11 [30]. To the contrary, offers of judgment made pursuant to Rule 68 generally are not revocable once issued and prior to expiration. *See, e.g., Richardson v. Nat'l R.R. Passenger Corp.*, 49 F.3d 760, 765 (D.C. Cir. 1995) ("[A] Rule 68 offer is simply not revocable during the [14] day period" for accepting or declining such an offer.); 12 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 3004 (2d ed. 1997) (noting that courts have agreed that a Rule 68 offer of judgment "could not be withdrawn once served"). Therefore, the Offers of Judgment remained valid until expiring on October 6, 2014.

Insofar as Plaintiffs contend their October 8, 2014, [22] Motion for Conditional Certification should "relate back to the date the [C]omplaint was filed" such that Defendants' [20] Motion to Dismiss should be struck, Plaintiffs overlook recent case law precluding operation of the relation back doctrine to motions seeking conditional certification under the FLSA. *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529-31 (2013). In *Symczyk*, the United States Supreme Court reasoned that the relation back doctrine did not apply in cases involving complaints seeking statutory damages under the FLSA because the plaintiff's FLSA claim in that case was completely satisfied by an offer of judgment. *Id.* The parties

8

did not dispute the claim was rendered moot by the offer of judgment, and the Supreme Court found the plaintiffs' collective action claims under the FLSA were thus no longer justiciable. *Id.* Accordingly, the Court finds that the relation back doctrine does not apply to cause Plaintiffs' October 8, 2014, [22] Motion for Conditional Certification to relate back to their original April 21, 2014, Collective Action Complaint [1] and does not prevent dismissal of Plaintiffs' FLSA claims, if in fact the unaccepted Offers of Judgment fully satisfied Plaintiffs' FLSA claims. Based on the foregoing, Plaintiffs' [29] Motion to Strike will be denied.

C.    Defendants' [20] Motion to Dismiss for Lack of Subject Matter Jurisdiction

      1.    Legal Standard

When faced with a challenge to its subject matter jurisdiction, "[a] court can find that subject matter jurisdiction is lacking based on '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Smith v. Potter*, 400 F. App'x 806, 809 (5th Cir. 2010) (quoting *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001)). Where a defendant challenges a federal court's subject matter jurisdiction, the court should first distinguish between a "facial" attack and a "factual" attack. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). "When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial." *TF-Harbor, LLC v. City of Rockwall, Tex.*, 18 F. Supp. 3d 810, 817 (N.D. Tex. 2014) *aff'd sub nom.*

9

*TF-Harbor, L.L.C. v. City of Rockwall Tex.*, 592 F. App'x 323 (5th Cir. 2015) (citations omitted). Where, as here, a defendant challenges the court's subject matter jurisdiction by submitting evidentiary materials, the defendant has made a "factual attack" and the plaintiff must "submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court" has subject matter jurisdiction. *Paterson*, 644 F.2d at 523.

      2.    <u>Mootness Based on Unaccepted Offers of Judgment</u>

Defendants argue that once the Offers of Judgment made to St. Amant and Hammond expired without being accepted, their respective FLSA claims were rendered moot. "Federal courts may only adjudicate actual cases or controversies." *In re B-727 Aircraft Serial No. 21010*, 272 F.3d 264, 271 (5th Cir. 2001) (citing U.S. Const. art. III, § 2). "[T]o qualify as a case for federal court adjudication, a case or controversy must exist at all stages of the litigation, not just at the time the suit was filed." *Lopez v. City of Houston*, 617 F.3d 336, 340 (5th Cir. 2010) (citations omitted). "[I]f the controversy is moot, both the trial and appellate courts lack subject matter jurisdiction." *Carr v. Saucier*, 582 F.2d 14, 16 (5th Cir. 1978) (citations omitted). Here, the controversy set forth in the [1] Collective Action Complaint is predicated on Plaintiffs' claims for overtime wages and liquidated damages under sections 207 and 216 of the FLSA.

"The FLSA is a federal statute establishing minimum wage, overtime pay, child labor, and equal pay requirements." *Picton v. Excel Grp., Inc.*, 192 F. Supp. 2d

10

706, 710 (E.D. Tex. 2001) (citing 29 C.F.R. § 778.0 (2001)). To establish a violation of section 207, a plaintiff employee must show: "(1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due." *Johnson v. Heckmann Water Resources (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). Any employer who violates the provisions of section 207 of the FLSA is liable to its employee in the amount of their unpaid overtime compensation and for liquidated damages equal to the award of unpaid overtime compensation. 29 U.S.C. § 216(b). At issue in this case is "the amount of overtime compensation due" to Plaintiffs, and the precise question is whether the unaccepted Offers of Judgment completely satisfied Plaintiffs' respective FLSA claims by offering the full amount of overtime compensation due to them.

Before answering that question, however, it must be noted that whether the unaccepted Offers of Judgment rendered Plaintiffs' individual FLSA claims moot presents an issue that has received much attention since *Symczyk*, 133 S. Ct. at 1528-29. Over the dissent of four justices advocating that an unaccepted offer of judgment which fully satisfies a plaintiff's claims should rarely, if ever, render those claims moot, the *Symczyk* majority noted the existence of disagreement among the Circuit Courts of Appeal as to "whether an unaccepted offer that fully satisfies a plaintiff's claim is sufficient to render the claim moot" but expressly declined to resolve the circuit split. *Id.* In the wake of *Symczyk*, courts have treated the

11

question of whether an unaccepted offer of judgment which fully satisfies a plaintiff's claims moots those claims as one controlled by the law of the circuit in which the court sits.[2] *See, e.g., Ritz v. Mike Rory Corp.*, 959 F. Supp. 2d 276, 279 (E.D. N.Y. 2013) (interpreting *Symczyk* and noting that "[i]n the context of FLSA cases, . . . the effect that a defendant's offer of judgment has on the viability of plaintiff's claim, and the overall lawsuit, is a question left to case law within the individual circuits").

The current state of the law in the Fifth Circuit is that an "offer of judgment [which] fully satisfie[s a plaintiff's] individual claims" renders those claims moot. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 919, 921 n.5 (5th Cir. 2008) (citations omitted).[3] Both before and after *Symczyk*, district courts in this circuit

---

[2] A resolution of this split may be forthcoming. On May 18, 2015, the Supreme Court granted certiorari to review a recent decision from the Ninth Circuit Court of Appeals and consider, among other issues, the following question: "Whether a case becomes moot, and thus beyond the judicial power of Article III, when the plaintiff receives an offer of complete relief on his claim." *Campbell-Ewald Co. v. Gomez*, 2015 WL 241891 (U.S.), Pet. for Writ of Certiorari (i); *see also Campbell-Ewald Co. v. Gomez*, 135 S. Ct. 2311 (2015) (granting certiorari).

[3] Particularly important in light of the *Symczyk* dissent, the Fifth Circuit has recently been presented with two opportunities to revisit the question of whether an offer of judgment which fully satisfies a plaintiff's individual claims renders those claims moot. In *Hooks v. Landmark Industries*, the United States District Court for the Southern District of Texas dismissed a plaintiff's claims for violation of the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693-1693r, finding that it lacked subject matter jurisdiction over the claims because an unaccepted Rule 68 offer of judgment made by the defendant would have completely satisfied those claims. No. H-12-0173, 2014 WL 2981229, at *4 (S.D. Tex. July 1, 2014). On July 31, 2014, the plaintiff filed a notice of appeal and stated the issue, in pertinent part, as follows: "[d]oes an unaccepted offer of judgment under [Rule] 68 to the named plaintiff . . . that, if accepted, would have provided the plaintiff the maximum statutory damages he could receive on his individual claim render the plaintiff's individual claim moot?" Br. of Appellant 12, No. 14-20496. The Fifth Circuit panel assigned to the case has received oral argument but not issued a decision as of this date. The second opportunity arises from the Fifth Circuit's remand of the decision in *Sandoz*, wherein the United States District Court for the Western District of Louisiana granted a motion to dismiss for lack of subject matter jurisdiction filed by the defendant, noting that "[d]espite the split in the circuits on the mootness question, the Fifth Circuit's ruling in *Sandoz* has been cited as and remains binding authority in this circuit for the conclusion that an unaccepted offer of judgment that affords a plaintiff full relief serves to moot her claims." *Sandoz v.*

12

have consistently interpreted *Sandoz* as making plain the Fifth Circuit's position that an unaccepted offer of judgment which fully satisfies a plaintiff's claims will moot those claims. *See, e.g.*, *Silva v. Tegrity Personnel Services, Inc.*, 986 F. Supp. 2d 826, 834 (S.D. Tex. 2013) ("[I]n the Fifth Circuit, unaccepted Rule 68 offers can moot FLSA claims.") (citing *Sandoz*, 553 F.3d at 920-21); *Masters v. Wells Fargo Bank South Cent., N.A.*, No. A-12-ca-376-SS, 2013 WL 3713492, at *4 (W.D. Tex. July 11, 2013) (acknowledging the *Symczyk* dissent but noting "[t]he Fifth Circuit holds that an unaccepted offer fully satisfying a claim does moot the claim") (citing *Sandoz*, 553 F.3d at 921 n.5); *Frascogna v. Security Check, LLC*, No. 3:07cv686-DPJ-JCS, 2009 WL 57102, at *2 (S.D. Miss. Jan. 7, 2009) (noting that "[a]n offer of complete relief will generally moot the plaintiff's claim") (citing *Sandoz*, 553 F.3d at 920-21). This Court is bound to apply the law of the Fifth Circuit as it currently stands, and if the Offers of Judgment fully satisfied Plaintiffs' claims, those claims were rendered moot.

Fundamental to the Court's analysis is that the determination as to whether Plaintiffs' claims became moot must be made based on the record as it stood on the date that the Offers of Judgment expired, October 6, 2014, and Plaintiffs' claims became moot, if at all, as of that date. *Silva*, 986 F. Supp. 2d at 830 (finding that if unaccepted offers of judgment rendered case moot because those offers fully satisfied the plaintiffs' claims, the case became moot as of the date that the

---

*Cingular Wireless LLC*, No. 6:07cv1308, 2015 WL 3540806, at *8 (W.D. La. June 2, 2015) (citations omitted). On July 1, 2015, the *Sandoz* plaintiff appealed the district court's decision granting the motion to dismiss. Notice of Appeal 1-2 [251], Case 6:07-cv-01308-RFD-PJH.

unaccepted offers expired and thus the court could not "consider any developments that took place after" the date the offers expired) (citing *Symczyk*, 133 S. Ct. at 1528). As a result, Plaintiffs' [22] Motion for Conditional Certification, Plaintiffs' [26] Amended Complaint, and Harris' [45] Notice of Filing of Consent to Joinder, which were all filed after the Offers expired, will not operate to preclude dismissal of Plaintiffs' claims if those claims became moot. *See Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 453 (5th Cir. 1995) ("[R]egardless of when the district court actually determines it lacks subject matter jurisdiction over the original plaintiff, 'Rule 15 ... do[es] not allow a party to amend to create jurisdiction where none actually existed.'") (quoting *Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 776 (5th Cir. 1986)).

3.   The Regular Rate of Compensation Under the FLSA

Whether Plaintiffs' claims became moot when the Offers of Judgment expired depends upon whether those Offers fully satisfied Plaintiffs' FLSA claims. In resolving the parties' dispute over whether the Offers fully satisfied Plaintiffs' claims, the Court must first determine each Plaintiff's regular rate of compensation under the FLSA. The FLSA states that

> [e]xcept as otherwise provided in this section, no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The regular rate is the "keystone" of section 207(a) because "the amount of overtime payments" that KMIS was required to pay Plaintiffs under

14

the FLSA depends on Plaintiffs' respective regular rates. *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 673 (7th Cir. 2010) (quoting *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945)) (internal marks omitted).

 "The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments." *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 (5th Cir. 2010) (quoting *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 461 (1948)).

> Since the term regular rate is defined to include all remuneration for employment (except statutory exclusions) whether derived from hourly rates, piece rates, production bonuses or other sources, the overtime provisions of the act cannot be avoided by setting an artificially low hourly rate upon which overtime pay is to be based and making up the additional compensation due to employees by other means.

29 C.F.R. § 778.500(a) (2015). The Department of Labor ("DOL") has stated that "[t]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."[4] *Id.* § 778.109.

   a.   The Parties' Contentions

The record reveals that the parties agree that St. Amant was paid $11.00 per hour for regular or "straight" time plus $11.00 per hour as a per diem, yielding a

---

[4] "[T]he DOL regulations under the FLSA . . . 'constitute a body of experience and informed judgment to which courts . . . may properly resort for guidance.'" *Vela v. City of Houston*, 276 F.3d 659, 667 (5th Cir. 2001) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Courts "must defer to these DOL regulations if . . . they are 'based on a permissible construction of the statute.'" *Id.* (quoting *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)).

total hourly payment of $22.00 per hour for the first forty hours of work performed each week. *See* Mot. to Dismiss 2-3, 6 [20]; Mem. in Opp'n to Mot. to Dismiss 4 [31]. For each hour of overtime work performed by St. Amant in a given week, the parties base their respective positions on St. Amant being paid a total of $27.50 per hour based on a $16.50 hourly payment plus the $11.00 hourly per diem payment which was paid to St. Amant for each hour in which he performed work, regular or overtime. *Id.* The $16.50 hourly payment was based on the $11.00 per hour regular or "straight" time payment, plus extra compensation in the amount of one half of $11.00, or $5.50. Mem. in Supp. of Mot. to Dismiss 7 [21]. KMIS thus based its "time and one-half" payments required under section 207(a) on Plaintiffs' $11.00 regular or "straight" time hourly rate. *Id.* The parties also appear to agree that Hammond was paid according to these same rates and calculations from April 2012 to July 2012, but that from February 2013 to November 2013, Hammond's pay was increased to $12.00 per regular hour with an hourly per diem of $12.00, and he was paid for overtime hours at a rate of $18.00 per hour, in addition to the hourly $12.00 per diem. *Compare* Mem. in Supp. of Mot. to Dismiss 7 [21] *with* Ex. 7 attached to Mem. in Opp'n to Mot. to Dismiss [31-7].

Defendants initially appear to reason that if the hourly per diem payments made to Plaintiffs for the first forty hours in each workweek were added to their respective hourly regular or "straight" time pay during those same hours, Plaintiffs' actual regular rates under the FLSA would be the sum of those hourly payments divided by forty hours. *See* Mem. in Supp. of Mot. to Dismiss 6 & n.6 [21].

Defendants further posit that the additional premiums paid to St. Amant and
Hammond for each overtime hour they worked should be excluded from the
calculation of their respective regular rates. *Id.* at 6-7. Using St. Amant's pay as
an example, this would mean that the $11.00 hourly per diem he received would be
added to the $11.00 hourly regular or "straight" time payments he received, and his
actual regular rate under the FLSA would be $22.00 per hour. *Id.* St. Amant's
overtime rate under section 207(a) thus would have been $33.00 per hour for each
overtime hour that he worked based on a regular rate of $22.00 per hour and an
additional overtime premium of half that regular rate, $11.00 per hour. *Id.*

Plaintiffs respond that the Offers did not completely satisfy their claims
because Defendants incorrectly calculated Plaintiffs' regular rates. Plaintiffs claim
that all hourly per diem payments, paid for both regular and overtime hours, must
be added to their hourly regular or "straight" time payments made only for the first
forty hours of a given week. Mem. in Opp'n to Mot. to Dismiss 9-10 [31]. The
resulting total should then be divided by forty hours as opposed to the actual
number of hours, regular and overtime, worked during that particular week. *See id.*
(citing *Gagnon*, 607 F.3d at 1037); *see also* Exs. 6 [31-6] and 7 [31-7]. Using this
method, the regular rate differs from week to week, and Plaintiffs appear to
conclude that St. Amant is owed a total of $2,778.34 in unpaid overtime and
Hammond is owed a total of $6,064.45 in unpaid overtime compensation.[5] Plaintiffs

---

[5] The Court observes that when liquidated damages are assessed using these amounts and
$1.00 is added to each, the resulting totals ($5,557.68 for St. Amant and $12,129.90 for Hammond)
differ without explanation from the $5,557.46 and $12,091.78 that Plaintiffs indicate in their [31]

17

also contend that Defendants acknowledge "[i]n a cleverly buried footnote" that their calculation of the regular rate does not include per diem payments made for each hour of overtime work performed by Plaintiffs, and that if Defendants' calculation did include those per diem payments, the result would yield greater unpaid overtime compensation owing to Plaintiffs. *Id.* at 12-13. Despite bearing the burden in the present procedural posture of this case, Plaintiffs do not include calculations supporting or explaining how they reach this conclusion. *Id.*

In Rebuttal, Defendants claim that Plaintiffs' calculation of overtime lacks support because Plaintiffs include in their calculation of their regular rates the per diem payments made by KMIS for overtime hours worked, but calculate the regular rate based on a forty hour workweek rather than the total hours actually worked in a workweek, regular and overtime. Rebuttal 7-8 [35]. Defendants also contend that even if per diem payments made for overtime hours are included in determining Plaintiffs' regular rates, the result will not change. *Id.* at 9-10. This is because the total remuneration paid to Plaintiffs by KMIS, inclusive of all per diem payments but minus any hourly overtime premiums paid, must be divided by the total number of hours worked by Plaintiffs, regular and overtime, rather than by a standard forty hour workweek. *Id.* Defendants reiterate that all hourly overtime premiums already paid to Plaintiffs should be excluded from the calculation of Plaintiffs' regular rates. *Id.* at 10-11.

---

Memorandum would satisfy their respective claims. Mem. in Opp'n to Mot. to Dismiss 8 [31]; Ex. 6 [31-6], Ex. 7 [31-7].

By way of their [43] Sur-Reply, Plaintiffs reason that the hourly overtime premiums KMIS paid to Plaintiffs do not qualify as "premium rates" under the statutory exclusion found in 29 U.S.C. § 207(e)(5), and therefore those overtime premiums must be included in calculating Plaintiffs' regular rates. Sur-Reply 3-5 [43]. Plaintiffs argue that "[all] per diems [sic] [must] be included in the 'regular rate[,]' [and] the only 'extra compensation' Plaintiffs received over their $22.00 an hour regular rate is overtime at $16.50 an hour." *Id.* at 4. Plaintiffs assert that the $16.50 "is not a 'premium' . . . [because] to qualify as a 'premium rate' under [section] 207(e)(5), the extra compensation for overtime hours must be at a premium rate over and above the regular rate." *Id.* (citing 29 C.F.R. § 778.308(b) (2014)). Although they did not make such a claim in their initial opposition [31] Memorandum, Plaintiffs conclude that the sum of all payments made by KMIS to Plaintiffs, including the hourly overtime premiums paid, must be divided by the total number of hours Plaintiffs worked in a given workweek, regular and overtime, to calculate their regular rate. *Id.* at 4-5. Relying on this method, Plaintiffs claim for the first time that "St. Amant is owed $4,540.89 times two for liquidated damages, or $9,141.78[,] and Hammond is owed $10[,]178.25 times two for liquidated damages[,] or $20,356.50."[6] *Id.* at 5.

---

[6] The formula underlying the sum of money Plaintiffs claim they are owed in their [43] Sur-Reply differs without explanation from the formula Plaintiffs previously advanced in their initial opposition to the [20] Motion to Dismiss. This difference is best illustrated using St. Amant's pay. In their Memorandum, Plaintiffs excluded all $16.50 hourly overtime payments from calculation of St. Amant's regular rate and appeared to argue that the sum of the remaining remuneration paid to him should always be divided by 40 hours rather than by the total number of hours he worked in a given workweek, regular and overtime. Mem. in Opp'n to Mot. to Dismiss 10 [31]. Yet, in their [43] Sur-Reply, Plaintiffs claim that the entire $16.50 hourly overtime payments made to St. Amant should be

19

b.   The Hourly Per Diem Payments Must Be Included in the Calculation of Plaintiffs' Respective Regular Rates

The facts surrounding KMIS' employment of Plaintiffs indicate that Plaintiffs' regular rate included at a minimum the sum of their hourly regular or "straight" time pay and their hourly per diem pay, regardless of how those payments may have been labeled. "The 'regular rate' of pay under the [FLSA] cannot be left to a declaration by the parties as to what is to be treated as the regular rate of the employee; it must be drawn from what happens under the employment contract . . . ." 29 C.F.R. § 778.108 (2015) (citing *Bay Ridge*, 334 U.S. at 464).

Taking St. Amant as an example, he was paid $11.00 per hour as regular or "straight" time and $11.00 per hour as a "per diem." The facts make evident that KMIS paid St. Amant the $11.00 hourly per diem every hour that he worked, regardless of whether he incurred expenses for which KMIS would have been justified in paying him a true per diem. Such payments did not constitute per diem payments excludable from the regular rate calculation under the FLSA. *See* 29 U.S.C. § 207(e)(2) (defining per diem payments which may be excluded from the regular rate calculation as "reasonable payments for traveling expenses, or other expenses, incurred by an employee" in furthering "his employer's interests and properly reimbursable by the employer"). Accordingly, the sum of the hourly

included in the calculation of his regular rate and that the sum of all remuneration paid by KMIS to St. Amant should be divided by the total number of hours he worked in a given workweek. Sur-Reply 5 [43]; *see also* Exs. "A" [43-1] and "B" [43-2].

regular or "straight" time payments and the hourly per diem payments "received regularly during the workweek" by Plaintiffs must be included in calculating their regular rates. *Gagnon*, 607 F.3d at 1041 (quoting *Bay Ridge*, 334 U.S. at 461).

      c.     The Hourly Overtime Premiums Paid to Plaintiffs by KMIS Must Be Excluded from the Calculation of Plaintiffs' Respective Regular Rates

Insofar as Plaintiffs contend in their [43] Sur-Reply that the additional hourly overtime premiums should be included in their respective regular rates, this contention is not persuasive. Sur-Reply 4-5 [43]; Exs. "A" [43-1] and "B" [43-2]. In calculating an employee's regular rate, payments falling within certain "statutory exclusions" may be excluded from the calculation. 29 C.F.R. §§ 778.109, 778.200 (2015). These "statutory exclusions" appear at 29 U.S.C. § 207(e)(1)-(7). The most pertinent here is the "premium rate" exclusion found in section 207(e)(5).

The regular rate does not include "extra compensation provided by a premium rate paid for certain hours worked by the employee in any . . . workweek because such hours are hours worked . . . in excess of the [employee's] maximum workweek . . . ." 29 U.S.C. § 207(e)(5). This "premium rate" paid "for work in excess of . . . weekly standard work periods" is regarded as an "overtime premium." 29 C.F.R. § 778.201(a) (2015); *see also Singer v. City of Waco, Tex.*, 324 F.3d 813, 827 (5th Cir. 2003) ("[O]vertime premiums are extra payments made by employers[, and t]hese sums are excluded from the total salary (from which the regular hourly rate is calculated) so that they do not improperly inflate the hourly rate.") (citing *Bay Ridge*, 334 U.S. at 464); 48B Am. Jur. 2d *Labor and Labor Relations* § 3129 (2015)

21

("An overtime premium is any additional sum received by an employee for work beyond a specified number of hours during a week . . . .") (citing *Bay Ridge*, 334 U.S. at 490)). In contrast to the position Plaintiffs appear to take, an employee's regular or "straight" time pay does not cease being paid when the employee works beyond forty hours in a given week. 29 C.F.R. § 778.110(a) (2015); *see also* Mem. in Opp'n to Mot. to Dismiss 9-10 [31]. Rather, for each hour an employee works beyond forty hours in a week, the employee is entitled to an overtime premium in addition to the employee's regular rate payment. *Id.* In order to comply with section 207(a), this overtime premium must be at least one-half the regular rate payment. *Id.*

Applying these principles to the facts of this case, the hourly overtime premium payments made by KMIS to Plaintiffs constituted "overtime premiums" which must be excluded from Plaintiffs' regular rates. By way of illustration, the parties agree that KMIS paid St. Amant an additional $5.50 per hour for each hour he worked beyond forty hours in a given workweek. This amount was paid in addition to St. Amant's $11.00 hourly regular or "straight" time pay and $11.00 hourly per diem pay. *See* Mem. in Supp. of Mot. to Dismiss 7 [21] *and* Mem. in Opp'n to Mot. to Dismiss 7 [31]. By definition, the extra compensation of $5.50 per hour was a "premium." Black's Law Dictionary 1219 (8th ed. 2004) (defining "premium" as "[a] sum of money paid in addition to a regular price, salary, or other amount"). There can be no dispute that the payment of the $5.50 hourly premium was anything other than "contingent upon [St. Amant] having worked in excess of . . . [40 hours] in the workweek . . . ." 29 C.F.R. § 778.202(a) (2015). When the $5.50

22

hourly overtime premium is added to the $11.00 regular rate payment and the

$11.00 hourly per diem to which St. Amant was entitled for each hour of work he

performed, the rate actually paid by KMIS to St. Amant during overtime hours was

$27.50 per hour, which is plainly "greater than" St. Amant's regular rate of $22.00

per hour.  Thus the $5.50 overtime premium paid by KMIS qualifies for the

premium rate exclusion provided for in section 207(e)(5).  *See id.* § 778.308(b) ("To

qualify under section 7(e)(5), the overtime rate must be greater than the regular

rate, either a fixed amount per hour or a multiple of the nonovertime rate, such as

one and one-third, one and one-half or two times that rate.").  The $5.50 hourly

overtime premiums paid to St. Amant for each overtime hour of work he performed

in a given workweek must be excluded from his regular rate pursuant to 29 U.S.C. §

207(e)(5).

> d.   Plaintiffs' Actual Regular Rate for Each Week is the Sum of Their
>      Hourly Regular or "Straight" Time Pay and Their Hourly Per Diem
>      Pay Divided By the Total Number of Hours Worked in the Workweek

Having determined that the hourly overtime premiums paid by KMIS to

Plaintiffs are excludable from the calculation of their regular rates pursuant to 29

U.S.C. § 207(e)(5), the Court finds that Plaintiffs' regular rates under the FLSA for

each workweek must be calculated by adding their hourly regular or "straight" time

payments, for both regular and overtime hours, to their hourly per diem payments,

for both regular and overtime hours.  29 C.F.R. § 778.109 (2015).  The resulting sum

must be divided by the total number of hours worked in a given workweek, regular

and overtime.  *Id.*  This method of calculation is exemplified by the calculation of an

employee's regular rate in the analogous context of regular time payments plus

payments labeled as bonuses but which have been deemed to be part of that

employee's regular rate. *See Gagnon*, 607 F.3d at 1042 (noting the analogous

relationship between hourly per diem payments and prior cases dealing with an

employer's payment of bonuses in an attempt to lower an employee's regular rate).

> If the employee receives, in addition to the earnings computed at [a] $12 hourly rate, a production bonus of $46 for the week, the regular hourly rate of pay is $13 an hour (46 hours at $12 yields $552; the addition of the $46 bonus makes a total of $598; this total divided by 46 hours yields a regular rate of $13). The employee is then entitled to be paid a total wage of $637 for 46 hours (46 hours at $13 plus 6 hours at $6.50 . . . ).

29 C.F.R. § 778.110(b) (2015).

Using St. Amant's pay as an example, the total $11.00 hourly per diem

payments made to St. Amant in a given workweek is analogous to the $46.00

production bonus payment described in 29 C.F.R. § 778.110(b). *Cf. id.* § 778.500(c)

("Where the employee is hired at a low hourly rate supplemented by . . . bonuses

(other than those excluded under section 7(e)) . . . or the like, his regular rate is not

the hourly rate but is the rate determined by dividing his total remuneration from

all these sources in any workweek by the number of hours worked in the week.").

Thus, for each week in which he worked overtime, the total amount of hourly per

diem payments made to St. Amant during that week must be added to his total

regular or "straight" time pay. *See id.* § 778.110(b). To obtain St. Amant's actual

regular rate, the resulting sum must be divided by the total number of hours St.

Amant worked during the particular workweek, regular and overtime. *See id.*

24

As demonstrated by the Court's calculations set forth in Appendix A, which was prepared using St. Amant's payroll records [21-3] submitted by Defendants, the result is that St. Amant's actual regular rate remained $22.00 per hour each week. *See* Appendix A, Columns B - F. Specifically, the first step is to ascertain the sum of all regular or "straight" pay (Column C) and all per diem pay received by St. Amant each week, inclusive of such pay for each hour of overtime in the given workweek (Column D). *See id.* The resulting sum is the total remuneration earned by St. Amant for the particular workweek exclusive of overtime premiums excludable under section 207(e)(5) (Column E), and this total remuneration must then be divided by the total number of hours St. Amant worked in the given workweek (Column B), regular and overtime. This calculation reveals that St. Amant's regular rate remained constant at $22.00 per hour (Column F). *See id.* Because St. Amant's regular rate was $22.00 per hour, he was entitled to an hourly overtime premium of $11.00 for every hour of overtime he worked, which overtime premium should have been added to his regular rate for each hour of overtime. Appendix A, Column G; *see also* 29 C.F.R. § 778.110(a) and (b) (2015); *Mumbower v. Callicott*, 526 F.2d 1183, 1187 (8th Cir. 1975) (The requirement in section 207(a)(1) that an employee "be paid overtime compensation for hours worked in excess of forty per week 'at a rate not less than one and one-half times the regular rate at which he is employed[]' . . . has been uniformly interpreted to require the fifty percent overtime premium to be added to the actual wage paid . . . .") (quoting 29 U.S.C. § 207(a)(1)).

25

With respect to Hammond, the Court's calculations as set out in Appendix B,[7]

yield an actual regular rate of $22.00 per hour from April 2012 to July 2012, and an

actual regular rate of $24.00 per hour from February 2013 to November 2013. *See*

Appendix B, Columns B - F. These regular rates are calculated using the same

method by which St. Amant's regular rate is calculated. *See id.* Hammond

therefore was entitled to an hourly overtime premium of $11.00 from April 2012 to

July 2012, and an overtime premium of $12.00 per hour from February 2013 to

November 2013. Appendix B, Column G; *see also* 29 C.F.R. § 778.110(b) (2015);

*Mumbower*, 526 F.2d at 1187 (citations omitted).

4.    The Offers of Judgment Fully Satisfied Plaintiffs' Claims Rendering
      Those Claims Moot and Requiring Dismissal of the Complaint

Pursuant to Rule 68, Defendants "offer[ed] to allow entry of judgment . . . in

favor of [St. Amant], against Defendants in the total sum of $1,436.50 . . . ." Offer of

Judgment to St. Amant [21-1, 3-4 of 11]. Defendants also "offer[ed] to allow entry of

judgment . . . in favor of [Hammond], against Defendants in the total sum of

---

[7] The Court created Appendix B using the payroll records submitted by Defendants in
support of their [20] Motion. *See* Hammond Payroll Records [21-4]. A conflict appears to exist in the
record regarding the number of overtime hours worked by Hammond for the week ending July 25,
2013. *Compare* Hammond Payroll Records [21-4, 2, 6 of 6] (indicating Hammond worked only one
overtime hour) *with* Hammond Calculations Submitted by Plaintiffs [31-7, 2 of 2] (indicating
Hammond worked two overtime hours). While Plaintiffs point out that Defendants do not offer
sworn testimony establishing that the payroll records they submit are accurate, Plaintiffs do not
raise a specific objection to the authenticity of Hammonds' payroll records, do not offer evidence
substantiating their assertion that Hammond worked two overtime hours during the week ending
July 25, 2013, and do not otherwise contest the validity of KMIS' payroll records. Mem. in Opp'n to
Mot. to Dismiss 7 [31]. As the parties arguing that this Court has subject matter jurisdiction in this
case, Plaintiffs must present evidence beyond conclusory assertions regarding KMIS' payroll records.
*Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012) ("The party asserting jurisdiction
bears the burden of proof for a 12(b)(1) motion to dismiss.") (citation omitted). Plaintiffs have not
met this burden, and as reflected in Appendix B, the Court resolves this apparent conflict in the
evidence by relying upon KMIS' payroll records to find that Hammond worked one overtime hour in
the week ending July 25, 2013. *Potter*, 400 F. App'x at 809 (quoting *Ramming*, 281 F.3d at 161).

26

$3,224.50 . . . ."  Offer of Judgment to Hammond [21-2, 4-5 of 14].  Bearing in mind

Plaintiffs' actual regular rates and the overtime premiums to which they were

entitled based on those regular rates, the Court finds that these Offers fully

satisfied Plaintiffs' FLSA claims.

Indispensable to this conclusion is the fact KMIS is entitled to a credit

pursuant to 29 U.S.C. § 207(h) for all overtime premium payments previously paid

and which are excludable under section 207(e)(5) from the calculation of Plaintiffs'

regular rates.  "Extra compensation paid as described in paragraph[ 207(e)](5), . . .

shall be creditable toward overtime compensation payable pursuant to" section 207.

29 U.S.C. § 207(h)(2); *see also* 29 C.F.R. § 778.202(a) (2015) (noting that extra

premium compensation which is paid for hours worked in excess of the weekly

maximum and thus is "excludable from the regular rate under section [207](e)(5) . . .

may be credited toward statutory overtime payments pursuant to section [207](h) of

the [FLSA].").

For example, during the week ending June 9, 2013, St. Amant worked 5.70

overtime hours.  Appendix A, Column I, Row 3.  For each of these hours he was

paid, in addition to his actual regular rate payment, a $5.50 hourly overtime

premium yielding a total of $31.35 in overtime premium pay for the 5.70 overtime

hours that week.  *Id.* at Column K, Row 3.  Based on his actual regular rate,

however, St. Amant should have been paid an hourly overtime premium of $11.00,

resulting in a total of $62.70 in overtime premium pay for the 5.70 overtime hours.

*Id.* at Column J, Row 3.  Pursuant to section 207(h), KMIS is entitled to credit for

27

the $31.35 overtime premium payment already made to St. Amant, such that for

the week of June 9, 2013, KMIS only owes the difference between the $62.70

overtime premium actually owed and the $31.35 overtime premium already paid,

which difference is $31.35. *Id.* at Column L, Row 3. As reflected in Appendices A

and B, the section 207(h) credit applies to all overtime premiums previously paid by

KMIS to Plaintiffs.

When the correct method of calculation is applied using St. Amant's actual

regular rate of $22.00 per hour and taking into account the section 207(h) credit to

which KMIS is entitled for overtime premium payments already made, it is

apparent that KMIS' Offer of Judgment to St. Amant fully satisfied his FLSA claim.

*See* Appendix A, Conclusions. Namely, St. Amant worked a total of 130.50 hours of

overtime, and after crediting KMIS for each $5.50 hourly overtime premium already

paid based upon KMIS' incorrect $11.00 per hour regular rate, St. Amant is owed a

total of $717.75 in overtime payments before liquidated damages are assessed. *Id.*

After assessing liquidated damages in the amount of $717.75, the total award

available to St. Amant under the FLSA is $1,435.50, and when $1.00 is added to

this amount the total becomes $1,436.50. *Id.* This is precisely what Defendants

offered St. Amant in their September 17, 2014, Offer of Judgment. *Id.*

Applying the correct method of calculation to Hammond's actual regular

rates reveals that Defendants' Offer also fully satisfied Hammond's claims. From

April 26, 2012, through July 19, 2012, Hammond's actual regular rate for FLSA

purposes was $22.00 per hour, and Hammond worked a total of 88.50 overtime

hours. *See* Appendix B, Conclusions. After crediting KMIS pursuant to section 207(h) for each of the $5.50 hourly overtime premium payments previously made to Hammond, the result is that KMIS owes Hammond an addition $486.75 in overtime pay for the period of April 26, 2012, through July 19, 2012. *Id.* With respect to the period from February 21, 2013, through November 7, 2013, the record reveals that Hammond's actual regular rate increased to $24.00 per hour and he worked a total of 187.50 overtime hours. *Id.* After crediting KMIS for each of the $6.00 hourly overtime premium payments previously made to Hammond during this time, the record reveals that KMIS owes Hammond an additional $1,125.00 in unpaid overtime premium pay based on his actual regular rate. *Id.* The sum total of overtime owing to Hammond for both periods of his employment with KMIS is $1,611.75, and once liquidated damages are assessed in the amount of $1,611.75, the total award available to Hammond under the FLSA is $3,223.50. *Id.* After adding $1.00 to this amount the total becomes $3,224.50, which is the same amount Defendants offered to Hammond on September 17, 2014. *Id.* The Offer of Judgment completely satisfied Hammond's FLSA claim.

Because the Offers of Judgment fully satisfied both Plaintiffs' claims, their claims were rendered moot under controlling Fifth Circuit precedent and this Court lacks jurisdiction. The [1] Collective Action Complaint must be dismissed. *Sandoz*, 553 F.3d at 919, 921 n.5 ("Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate . . . because he has no remaining stake.") (quoting *Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991)). The

29

Offers fully satisfied Plaintiffs' respective FLSA claims. *See* Appendices A and B. Although the Offers did not address the pre-judgment interest requested in the Collective Action Complaint, Plaintiffs are not entitled to pre-judgment interest. *See Knowlton v. Greenwood Indep. Sch. Dist.*, 957 F.2d 1172, 1183 (5th Cir. 1992) (noting "[p]rejudgment interest is not available in" the context of FLSA claims for unpaid overtime and liquidated damages).

Plaintiffs' FLSA claims became moot when the unaccepted Offers expired on October 6, 2014, and developments taking place after October 6, 2014, are of no consequence.[8] *See, e.g.*, *Silva*, 986 F. Supp. 2d at 830 (citations omitted). As a result, the Court no longer possesses subject matter jurisdiction over Plaintiffs' claims, and the Complaint must be dismissed. *See Escobedo v. Estelle*, 655 F.2d 613, 614 (5th Cir. 1981) (Where a case or controversy presented to a federal court becomes moot, that court no longer possesses subject matter jurisdiction.); *see also* Fed. R. Civ. P. 12(h)(3) (If a federal court determines that it lacks subject matter jurisdiction, "the court must dismiss the action.").

## III. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs' [29] Motion to Strike Offers of Judgment and Motion to Dismiss and Plaintiffs' [42] Request for

---

[8] To the extent that Harris has a claim against Defendants under the FLSA, the Court notes that Harris' rights, if any, are protected in that he may file a new lawsuit against Defendants or attempt to opt-in to similar cases currently pending against these Defendants. *See Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1284 (5th Cir. 1981) (noting that where original plaintiff who lacked standing attempted to amend his complaint to add potential class claimants in an effort to avoid dismissal, the amendment was precluded because the plaintiff was without standing and the potential class claimants could protect their own rights by filing a new suit).

Oral Argument should be denied, Defendants' [20] Motion to Dismiss for Lack of Subject Matter Jurisdiction should be granted, and the remaining pending Motions [14] [22] [36] [48] [58] should be denied as moot. This civil action should be dismissed. Accordingly,

**IT IS**, **THEREFORE**, **ORDERED AND ADJUDGED** that the [29] Motion to Strike Offers of Judgment and Motion to Dismiss filed by Plaintiffs Melvin A. St. Amant and Chester B. Hammond is **DENIED**.

**IT IS**, **FURTHER**, **ORDERED AND ADJUDGED** that Plaintiffs' [42] Request for Oral Argument is **DENIED**.

**IT IS**, **FURTHER**, **ORDERED AND ADJUDGED** that the [20] Motion to Dismiss for Lack of Subject Matter Jurisdiction is **GRANTED**.

**IT IS**, **FURTHER**, **ORDERED AND ADJUDGED** that Defendants' [14] Rule 12(b)(6) Motion to Dismiss Plaintiffs' Claims for Injunctive Relief and Prejudgment Interest is **DENIED AS MOOT**.

**IT IS**, **FURTHER**, **ORDERED AND ADJUDGED** that Plaintiffs' [22] Motion for Conditional Certification is **DENIED AS MOOT**.

**IT IS**, **FURTHER**, **ORDERED AND ADJUDGED** that Defendants' [36] Motion to Dismiss Plaintiffs' Amended Complaint is **DENIED AS MOOT**.

**IT IS**, **FURTHER**, **ORDERED AND ADJUDGED** that Defendants' [48] Motion to Dismiss Opt-in Plaintiff's Claims for Lack of Subject Matter Jurisdiction is **DENIED AS MOOT**.

**IT IS**, **FURTHER**, **ORDERED AND ADJUDGED** that Plaintiffs' [58]

Motion to Allow Equitable Tolling is **DENIED AS MOOT**.

**IT IS**, **FURTHER**, **ORDERED AND ADJUDGED** that Defendants' [76]

Motion for Leave to File Supplemental Memorandum is **DENIED AS MOOT**.

**IT IS**, **FURTHER**, **ORDERED AND ADJUDGED** that this civil action is

**DISMISSED**.

**SO ORDERED AND ADJUDGED**, this the 28th day of July, 2015.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

| | A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Week Ending | Total Hours | Total Regular or "Straight" Pay (B x $11.00) | Total "Per Diem" Pay (B x $11.00) | Total Remuneration Excluding Overtime Premiums Excluded Under 29 U.S.C. 207(e)5 (C + D) | Actual Regular Rate (E / B) | Hourly Overtime Premium Based on Actual Regular Rate (F x .5) | Hourly Overtime Premium Based on Incorrect Regular Rate ($11.00 x .5) | Number of Overtime Hours Worked (B - 40.00) | Total Overtime Premium Actually Owed (G x I) | Total Overtime Premium Already Paid and to be Credited (H x I) | Total Overtime Premium Owed After Credit (J - K) |
| 3 | 9-Jun-13 | 45.70 | $502.70 | $502.70 | $1,005.40 | $22.00 | $11.00 | $5.50 | 5.70 | $62.70 | $31.35 | $31.35 |
| 4 | 16-Jun-13 | 40.30 | $443.30 | $443.30 | $886.60 | $22.00 | $11.00 | $5.50 | 0.30 | $3.30 | $1.65 | $1.65 |
| 5 | 30-Jun-13 | 40.40 | $444.40 | $444.40 | $888.80 | $22.00 | $11.00 | $5.50 | 0.40 | $4.40 | $2.20 | $2.20 |
| 6 | 28-Jul-13 | 54.00 | $594.00 | $594.00 | $1,188.00 | $22.00 | $11.00 | $5.50 | 14.00 | $154.00 | $77.00 | $77.00 |
| 7 | 11-Aug-13 | 44.40 | $488.40 | $488.40 | $976.80 | $22.00 | $11.00 | $5.50 | 4.40 | $48.40 | $24.20 | $24.20 |
| 8 | 25-Aug-13 | 54.00 | $594.00 | $594.00 | $1,188.00 | $22.00 | $11.00 | $5.50 | 14.00 | $154.00 | $77.00 | $77.00 |
| 9 | 15-Sep-13 | 48.00 | $528.00 | $528.00 | $1,056.00 | $22.00 | $11.00 | $5.50 | 8.00 | $88.00 | $44.00 | $44.00 |
| 10 | 29-Sep-13 | 60.00 | $660.00 | $660.00 | $1,320.00 | $22.00 | $11.00 | $5.50 | 20.00 | $220.00 | $110.00 | $110.00 |
| 11 | 13-Oct-13 | 54.00 | $594.00 | $594.00 | $1,188.00 | $22.00 | $11.00 | $5.50 | 14.00 | $154.00 | $77.00 | $77.00 |
| 12 | 27-Oct-13 | 48.50 | $533.50 | $533.50 | $1,067.00 | $22.00 | $11.00 | $5.50 | 8.50 | $93.50 | $46.75 | $46.75 |
| 13 | 3-Nov-13 | 42.90 | $471.90 | $471.90 | $943.80 | $22.00 | $11.00 | $5.50 | 2.90 | $31.90 | $15.95 | $15.95 |
| 14 | 17-Nov-13 | 50.50 | $555.50 | $555.50 | $1,111.00 | $22.00 | $11.00 | $5.50 | 10.50 | $115.50 | $57.75 | $57.75 |
| 15 | 24-Nov-13 | 45.90 | $504.90 | $504.90 | $1,009.80 | $22.00 | $11.00 | $5.50 | 5.90 | $64.90 | $32.45 | $32.45 |
| 16 | 8-Dec-13 | 40.30 | $443.30 | $443.30 | $886.60 | $22.00 | $11.00 | $5.50 | 0.30 | $3.30 | $1.65 | $1.65 |
| 17 | 15-Dec-13 | 51.50 | $566.50 | $566.50 | $1,133.00 | $22.00 | $11.00 | $5.50 | 11.50 | $126.50 | $63.25 | $63.25 |
| 18 | 22-Dec-13 | 46.10 | $507.10 | $507.10 | $1,014.20 | $22.00 | $11.00 | $5.50 | 6.10 | $67.10 | $33.55 | $33.55 |
| 19 | 19-Jan-13 | 44.00 | $484.00 | $484.00 | $968.00 | $22.00 | $11.00 | $5.50 | 4.00 | $44.00 | $22.00 | $22.00 |
| 20 | Subtotal | | | | | | | | 130.50 | $717.75 | | $717.75 |

Conclusions

| | |
|---|---|
| Total Overtime Hours Worked | 130.50 |
| Total Overtime Owed Before Assessing Liquidated Damages | $717.75 |
| Amount of Liquidated Damages | $717.75 |
| Plus $1.00 | $1.00 |
| Total Damages Owed | $1,436.50 |

Appendix "A" - St. Amant

1 of 1

**Hammond - April 2012 through July 2012**

| Week Ending | Total Hours | Total Regular or "Straight" Pay (B x $11.00) | Total "Per Diem" Pay (B x $11.00) | Total Remuneration Excluding Overtime Premiums Excluded Under 29 U.S.C. 207(e)5 (C + D) | Actual Regular Rate (E / B) | Hourly Overtime Premium Based on Actual Regular Rate (F x .5) | Hourly Overtime Premium Based on Incorrect Regular Rate ($11.00 x .5) | Number of Overtime Hours Worked (B - 40.00) | Total Overtime Premium Actually Owed (G x I) | Total Overtime Premium Already Paid and to be Credited (H x I) | Total Overtime Premium Owed After Credit (J - K) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 26-Apr-12 | 45.50 | $500.50 | $500.50 | $1,001.00 | $22.00 | $11.00 | $5.50 | 5.50 | $60.50 | $30.25 | $30.25 |
| 3-May-12 | 49.00 | $539.00 | $539.00 | $1,078.00 | $22.00 | $11.00 | $5.50 | 9.00 | $99.00 | $49.50 | $49.50 |
| 10-May-12 | 57.00 | $627.00 | $627.00 | $1,254.00 | $22.00 | $11.00 | $5.50 | 17.00 | $187.00 | $93.50 | $93.50 |
| 24-May-12 | 53.00 | $583.00 | $583.00 | $1,166.00 | $22.00 | $11.00 | $5.50 | 13.00 | $143.00 | $71.50 | $71.50 |
| 31-May-12 | 41.50 | $456.50 | $456.50 | $913.00 | $22.00 | $11.00 | $5.50 | 1.50 | $16.50 | $8.25 | $8.25 |
| 7-Jun-12 | 44.00 | $484.00 | $484.00 | $968.00 | $22.00 | $11.00 | $5.50 | 4.00 | $44.00 | $22.00 | $22.00 |
| 14-Jun-12 | 49.50 | $544.50 | $544.50 | $1,089.00 | $22.00 | $11.00 | $5.50 | 9.50 | $104.50 | $52.25 | $52.25 |
| 21-Jun-12 | 45.00 | $495.00 | $495.00 | $990.00 | $22.00 | $11.00 | $5.50 | 5.00 | $55.00 | $27.50 | $27.50 |
| 28-Jun-12 | 50.50 | $555.50 | $555.50 | $1,111.00 | $22.00 | $11.00 | $5.50 | 10.50 | $115.50 | $57.75 | $57.75 |
| 19-Jul-12 | 53.50 | $588.50 | $588.50 | $1,177.00 | $22.00 | $11.00 | $5.50 | 13.50 | $148.50 | $74.25 | $74.25 |
| Subtotal | | | | | | | | 88.50 | | | $486.75 |

Subtotals - April 2012 to July 2012

Total Overtime Hours Worked from April 2012 through July 2012 — 88.50

Overtime Owed for April 2012 through July 2012 Before Assessing Liquidated Damages — $486.75

Appendix "B" - Hammond

| | A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 24 | **Hammond** - February 2013 through November 2013 | | | | | | | | | | | |
| 25 | Week Ending | Total Hours | Total Regular or "Straight" Pay (B x $12.00) | Total "Per Diem" Pay (B x $12.00) | Total Remuneration Excluding Overtime Premiums Excluded Under 29 U.S.C. 207(e)5 (C + D) | Actual Regular Rate (E / B) | Hourly Overtime Premium Based on Actual Regular Rate (F x .5) | Hourly Overtime Premium Based on Incorrect Regular Rate ($12.00 x .5) | Number of Overtime Hours Worked (B - 40.00) | Total Overtime Premium Actually Owed (G x I) | Total Overtime Premium Already Paid and to be Credited (H x I) | Total Overtime Premium Owed After Credit (J - K) |
| 26 | | | | | | | | | | | | |
| 27 | 21-Feb-13 | 42.50 | $510.00 | $510.00 | $1,020.00 | $24.00 | $12.00 | $6.00 | 2.50 | $30.00 | $15.00 | $15.00 |
| 28 | 28-Feb-13 | 48.50 | $582.00 | $582.00 | $1,164.00 | $24.00 | $12.00 | $6.00 | 8.50 | $102.00 | $51.00 | $51.00 |
| 29 | 7-Mar-13 | 42.50 | $510.00 | $510.00 | $1,020.00 | $24.00 | $12.00 | $6.00 | 2.50 | $30.00 | $15.00 | $15.00 |
| 30 | 14-Mar-13 | 40.50 | $486.00 | $486.00 | $972.00 | $24.00 | $12.00 | $6.00 | 0.50 | $6.00 | $3.00 | $3.00 |
| 31 | 21-Mar-13 | 44.50 | $534.00 | $534.00 | $1,068.00 | $24.00 | $12.00 | $6.00 | 4.50 | $54.00 | $27.00 | $27.00 |
| 32 | 28-Mar-13 | 40.50 | $486.00 | $486.00 | $972.00 | $24.00 | $12.00 | $6.00 | 0.50 | $6.00 | $3.00 | $3.00 |
| 33 | 11-Apr-13 | 40.50 | $486.00 | $486.00 | $972.00 | $24.00 | $12.00 | $6.00 | 0.50 | $6.00 | $3.00 | $3.00 |
| 34 | 18-Apr-13 | 42.50 | $510.00 | $510.00 | $1,020.00 | $24.00 | $12.00 | $6.00 | 2.50 | $30.00 | $15.00 | $15.00 |
| 35 | 25-Apr-13 | 54.00 | $648.00 | $648.00 | $1,296.00 | $24.00 | $12.00 | $6.00 | 14.00 | $168.00 | $84.00 | $84.00 |
| 36 | 2-May-13 | 44.50 | $534.00 | $534.00 | $1,068.00 | $24.00 | $12.00 | $6.00 | 4.50 | $54.00 | $27.00 | $27.00 |
| 37 | 9-May-13 | 40.50 | $486.00 | $486.00 | $972.00 | $24.00 | $12.00 | $6.00 | 0.50 | $6.00 | $3.00 | $3.00 |
| 38 | 16-May-13 | 46.50 | $558.00 | $558.00 | $1,116.00 | $24.00 | $12.00 | $6.00 | 6.50 | $78.00 | $39.00 | $39.00 |
| 39 | 23-May-13 | 56.50 | $678.00 | $678.00 | $1,356.00 | $24.00 | $12.00 | $6.00 | 16.50 | $198.00 | $99.00 | $99.00 |
| 40 | 30-May-13 | 40.50 | $486.00 | $486.00 | $972.00 | $24.00 | $12.00 | $6.00 | 0.50 | $6.00 | $3.00 | $3.00 |
| 41 | 20-Jun-13 | 54.00 | $648.00 | $648.00 | $1,296.00 | $24.00 | $12.00 | $6.00 | 14.00 | $168.00 | $84.00 | $84.00 |
| 42 | 27-Jun-13 | 48.00 | $576.00 | $576.00 | $1,152.00 | $24.00 | $12.00 | $6.00 | 8.00 | $96.00 | $48.00 | $48.00 |
| 43 | 4-Jul-13 | 48.00 | $576.00 | $576.00 | $1,152.00 | $24.00 | $12.00 | $6.00 | 8.00 | $96.00 | $48.00 | $48.00 |
| 44 | 18-Jul-13 | 48.00 | $576.00 | $576.00 | $1,152.00 | $24.00 | $12.00 | $6.00 | 8.00 | $96.00 | $48.00 | $48.00 |
| 45 | 25-Jul-13 | 41.00 | $492.00 | $492.00 | $984.00 | $24.00 | $12.00 | $6.00 | 1.00 | $12.00 | $6.00 | $6.00 |
| 46 | 1-Aug-13 | 54.00 | $648.00 | $648.00 | $1,296.00 | $24.00 | $12.00 | $6.00 | 14.00 | $168.00 | $84.00 | $84.00 |
| 47 | 15-Aug-13 | 48.00 | $576.00 | $576.00 | $1,152.00 | $24.00 | $12.00 | $6.00 | 8.00 | $96.00 | $48.00 | $48.00 |
| 48 | 22-Aug-13 | 48.00 | $576.00 | $576.00 | $1,152.00 | $24.00 | $12.00 | $6.00 | 8.00 | $96.00 | $48.00 | $48.00 |
| 49 | 29-Aug-13 | 48.00 | $576.00 | $576.00 | $1,152.00 | $24.00 | $12.00 | $6.00 | 8.00 | $96.00 | $48.00 | $48.00 |
| 50 | 5-Sep-13 | 46.00 | $552.00 | $552.00 | $1,104.00 | $24.00 | $12.00 | $6.00 | 6.00 | $72.00 | $36.00 | $36.00 |
| 51 | 19-Sep-13 | 48.00 | $576.00 | $576.00 | $1,152.00 | $24.00 | $12.00 | $6.00 | 8.00 | $96.00 | $48.00 | $48.00 |

Appendix "B" - Hammond

|  | A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 52 | 13-Oct-13 | 48.00 | $576.00 | $576.00 | $1,152.00 | $24.00 | $12.00 | $6.00 | 8.00 | $96.00 | $48.00 | $48.00 |
| 53 | 24-Oct-13 | 48.00 | $576.00 | $576.00 | $1,152.00 | $24.00 | $12.00 | $6.00 | 8.00 | $96.00 | $48.00 | $48.00 |
| 54 | 31-Oct-13 | 48.00 | $576.00 | $576.00 | $1,152.00 | $24.00 | $12.00 | $6.00 | 8.00 | $96.00 | $48.00 | $48.00 |
| 55 | 7-Nov-13 | 48.00 | $576.00 | $576.00 | $1,152.00 | $24.00 | $12.00 | $6.00 | 8.00 | $96.00 | $48.00 | $48.00 |
| 56 | Subtotal |  |  |  |  |  |  |  | 187.50 |  |  | $1,125.00 |
| 57 |  |  |  |  |  |  |  |  |  |  |  |  |
| 58 | Subtotals - February 2012 to November 2013 |  |  |  |  |  |  |  |  |  |  |  |
| 59 |  |  |  |  |  |  |  |  |  |  |  |  |
| 60 | Total Overtime Hours Worked from Feb 2013 through November 2013 |  |  |  |  |  |  |  |  |  |  | 187.50 |
| 61 | Overtime Owed for Feb 2013 through Nov 2013 Before Assessing Liquidated Damages |  |  |  |  |  |  |  |  |  |  | $1,125.00 |
| 62 |  |  |  |  |  |  |  |  |  |  |  |  |
| 63 |  |  |  |  |  |  |  |  |  | Conclusions |  |  |
| 64 |  |  |  |  |  |  |  |  |  |  |  |  |
| 65 | Total Overtime Owed for Both Periods of Employment Before Assessing Liquidated Damages ($486.75 + $1,125.00) |  |  |  |  |  |  |  |  |  |  | $1,611.75 |
| 66 | Amount of Liquidated Damages |  |  |  |  |  |  |  |  |  |  | $1,611.75 |
| 67 | Plus $1.00 |  |  |  |  |  |  |  |  |  |  | $1.00 |
| 68 | Total Damages Owed |  |  |  |  |  |  |  |  |  |  | $3,224.50 |

Appendix "B" - Hammond

3 of 3